IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

     v.   *   Criminal No. RDB-06-060

DARRY MARVIN HARROD   *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On July 1, 2009, Darry Marvin Harrod filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 48). Marvin challenges the sentence of 151 months plus three years supervised release that this Court imposed on November 8, 2006. The Government filed an opposition brief. This Court has reviewed the record and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons set forth below, the Motion to Vacate Under 28 U.S.C. § 2255 is DENIED.

## BACKGROUND

On February 9, 2006, a federal grand jury indicted Darry Marvin Harrod for Count One, possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922 (g) (1); Count Two, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924 (c); and Count Three, conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846.

On August 16, 2006, Harrod appeared before this Court and pled guilty to Count Three. Pursuant to a plea agreement with the government, Harrod waived his right to appeal under 18 U.S.C. § 3742 with limited exceptions.

The relevant facts are not in dispute and were stipulated to by Harrod in his plea

1

agreement. In sum, those facts are as follows: On July 5, 2005, at 1:15 a.m., police officers observed Harrod on the sidewalk in the 1200 Block of Sergeant Street in Baltimore, Maryland. Police witnessed individuals walking up to Harrod and speaking with him. Harrod would then motion to another person, Banks, who would walk over and speak to Harrod. Banks would take money from the individuals talking to Harrod, retreat into an alley, and return 30 to 40 seconds later to give a small object to the individuals. The individuals were observed placing the objects in their mouths, bra area, or pockets. Harrod would watch the area and motion to the buyers that it was okay to leave. *See* Plea Agreement, page 3.

One of the officers moved into a position in which he could observe the alley. That officer observed Banks retrieving suspected CDS from a white object that looked like a cloth on the ledge of a step of a vacant house in the alley. The officer notified an arrest team, and Harrod and Banks were arrested. From the steps of the vacant house, the police recovered a white sock. Inside of the sock were 20 red top vials containing 3.9 grams of cocaine base. They also found a .32 caliber Smith and Wesson revolver, loaded with 4 rounds. The police further recovered $815 in cash from Banks, but recovered nothing from Harrod. *Id*.

On October 27, 2006, Harrod was sentenced to 151 months in prison plus three years of supervised release. Harrod filed an appeal on January 9, 2007. (ECF No. 29). On April 27, 2007, the United States Court of Appeals for the Fourth Circuit dismissed his appeal. (ECF No. 33).

On July 1, 2009, Harrod filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF No. 48).

ANALYSIS

Harrod alleges two main grounds for finding his guilty plea invalid.  First, Harrod alleges that the prosecution failed to disclose exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83 (1963), and that this failure renders his guilty plea unknowing, involuntary, and invalid.  Mot. to Vacate 7 (ECF No. 48).  He asserts that the factual basis for his guilty plea included false statements by a police officer, and that the government should have disclosed that the credibility of the officer had been compromised.  *Id.* at 8.  Second, Harrod claims that his defense counsel rendered ineffective assistance of counsel and therefore his guilty plea is invalid.  Mot. to Vacate 9.  Harrod does not meet the burden of proving either claim.  The evidence Harrod provides for his *Brady* claim is insufficient, and the record reflects that his representation by counsel was sufficient.

I. Brady Violation Claim

Under *Brady v. Maryland*, 373 U.S. 83 (1963), prosecutors in a criminal case must turn over exculpatory evidence to the defense upon request. *Brady*, 373 U.S. at 87.  Failure to provide information that is favorable to the accused is a violation of the Due Process Clause of the Fourteenth Amendment where the evidence is material to guilt or punishment.  *Id*.  However, the Supreme Court held in *United States v. Ruiz*, 536 U.S. 622 (2002), that federal prosecutors do not need to provide exculpatory *impeachment* evidence during the plea bargaining process.  *Ruiz*, 536 U.S. at 633.  Even if the prosecution was required to turn over any kind of exculpatory evidence in this case, Harrod has not proven that any such evidence existed.

Harrod submits to the Court a July 1, 2008, *Baltimore Sun* newspaper article describing allegations by Maryland state prosecutors that the police officer who arrested him falsified evidence in two cases.  He claims that in light of this article, it is not unreasonable to assume that the officer falsified evidence in other cases. Mot. to Vacate 6.  Further, Harrod alleges that that

the prosecution should have turned over the information about the officer's false statements under *Brady* because the evidence was exculpatory. *Id*. at 7.

As the government points out, Harrod admitted both in court and to a presentence report writer that he committed the offenses as the officer had described them. Government's Opp'n 12 (ECF No. 50). Harrod also stated, "I accept responsibility for what I did on July 5, 2005, I knew it was illegal . . . . I sold to support my own habit." *See* Government's Opp'n, Ex. 2, page 4. What's more, the *Baltimore Sun* article bears no relationship to Harrod's case. First, the newspaper article was published three years *after* Harrod's arrest. Second, the newspaper article makes clear that that the officer was not convicted of the alleged wrongdoing. Third, the article does not suggest that any officer acted inappropriately during Harrod's arrest. Rather, the article proves that in July of 2008, it became public knowledge that state prosecutors had lost confidence in the officer based on unrelated cases, and that they had reached that conclusion in April of 2008. Thus nothing in the article suggests the existence of any information in Harrod's case, almost three years earlier, that was known to state or federal prosecutors or that should have been shared with the defense under *Brady*.

II. Ineffective Assistance of Counsel Claim

A two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) governs the standard for examining ineffective assistance claims. First, a petitioner must demonstrate that the performance of his counsel was deficient by falling below an objective standard of reasonableness. *Id.* Second, a petitioner must demonstrate that he suffered prejudice as a result of the defective performance. *Id.* The Supreme Court has made it clear that courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

under the circumstances, the challenged action might be considered a sound trial strategy." *Id*. at 689. Further, the Fourth Circuit has found that in situations where a petitioner pled guilty, he must demonstrate that "there is a reasonable probability that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988.)

Harrod does not point to any evidence that his counsel acted ineffectively or that he would have insisted on going to trial. He provides an allegation that his attorney pressured him to accept a plea agreement. But the record reflects that his guilty plea was entirely voluntary, knowledgeable, and intelligent, as is required by the Supreme Court. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citing *Brady* v. *United States,* 397 U.S. 742, 748, (1970)). *See also Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969). In Harrod's plea agreement, directly above his signature, Harrod stated, "I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it . . . . I understand this plea agreement, and I voluntarily agree to it." *See* Plea Agreement page 6.

Further, it appears that Harrod's attorney engaged in lengthy and successful plea negotiations. The government had developed strong evidence against Harrod. Notably, the government points out that Harrod sold drugs within plain view of undercover officers on several occasions. Government's Opp'n 10. Though Harrod was charged with three counts, he pled guilty to just one count. In addition, the government notes that Harrod's prompt acceptance of responsibility resulted in a three-level reduction in the adjusted offense level and that the attempt to file and argue pretrial motions would have resulted in at least 17 additional months of imprisonment. *Id.* The government also contends that it waived the filing of enhancement of 21 US.C. § 851 that would have subjected Harrod to an advisory sentencing guideline of 188-235

5

months and admits that Harrod's attorney "was able to convince the government to withdraw evidence favoring a more lengthy sentence." *Id.* at 10, 12.

Taken in light of the circumstances, the conduct of Harrod's attorney appears to be "within the range of competence normally demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687. At no point does Harrod point to "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687. Further, there is no evidence that Harrod was prejudiced by his attorney's conduct. In fact, every indication is that Harrod willingly pled guilty after his attorney negotiated a more lenient agreement. If Harrod thought at the time that his attorney should take additional steps to try to prove his innocence, he could have rejected that plea agreement.

## CONCLUSION

For the reasons stated herein, Harrod's Motion to Vacate is DENIED. A Separate Order follows.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2) (2000). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

SO ORDERED.

Dated March 7, 2011.                                          /s/_____
                                                              Richard D. Bennett
                                                              United States District Judge